IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF NEW YORK

_____

MARY ANN GUINTA,

                              Plaintiff,                    Civil Action No.
                                                            6:04-CV-125 (LEK/DEP)


                                       v.


JO ANNE B. BARNHART, Commissioner
of Social Security,
                              Defendant.

_____

APPEARANCES:                              OF COUNSEL:

FOR PLAINTIFF:

McMAHON, KUBLICK LAW FIRM                 JENNIFER GALE SMITH, ESQ.
500 South Salina St.
Suite 816
Syracuse, New York 13202

FOR DEFENDANT:

HON. GLENN T. SUDDABY                     WILLIAM H. PEASE, ESQ.
United States Attorney for the            Assistant U.S. Attorney
Northern District of New York
P.O. Box 7198
100 S. Clinton Street
Syracuse, NY 13261-7198


OFFICE OF GENERAL COUNSEL                 BARBARA L. SPIVAK, ESQ.
Social Security Administration            Chief Counsel, Region II
26 Federal Plaza
New York, NY 10278                        KAREN T. CALLAHAN, ESQ.
                                          Assistant Regional Counsel

DAVID E. PEEBLES
U.S. MAGISTRATE JUDGE

<u>REPORT AND RECOMMENDATION</u>

Plaintiff Mary Ann Guinta, who suffers from the residual effects of surgery performed in 2001 to address a brain aneurysm, has commenced this proceeding to challenge a determination that she is not disabled, and thus ineligible to receive disability insurance Social Security benefits.  In support of her challenge, plaintiff asserts that the administrative law judge ("ALJ") who made the ultimate finding of no disability improperly overlooked an opinion of one of her treating physicians, to the effect that she is incapable of working, and that her subjective complaints of pain, dizziness, and other limiting conditions were improperly discounted, without adequate explanation.

Based upon a thorough and careful review of the record which was before the agency, I find that the ALJ's determination of no disability was the product of an application of proper legal principles, and is supported by substantial evidence.

I.     <u>BACKGROUND</u>

Plaintiff was born on February 26, 1953; at the time of the administrative hearing in this matter, she was fifty years of age.

2

Administrative Transcript at pp. 44, 225.[1]  Plaintiff is married and lives with her husband and four children who, at the time of the hearing, ranged in age from fourteen to twenty-two years old.  AT 70, 231.  In her hearing testimony, plaintiff described her primary vocation as raising her family. AT 226.

Plaintiff is a college graduate, having achieved a bachelor's degree in liberal arts with majors in math and science, and minors in philosophy and theology.  AT 59, 156, 225-26.  Prior to January of 2001, plaintiff worked as a part-time retail clerk in a jewelry store, where her duties included inventorying of merchandise, ordering, cleaning, typing, packaging and performing minor repairs.  AT 54, 63, 76, 227-28.

In or about January of 2001, plaintiff slipped and fell, hitting her head on ice.  AT 93, 228.  While plaintiff did not immediately experience any significant adverse effects as a result of that fall, she later became nauseous while eating dinner and, after trying to walk, fell and hit her chin. AT 93.  Plaintiff subsequently presented herself to the emergency room at University Hospital on January 27, 2001, reporting that since her fall she had experienced headaches, muscle aches, and dizziness.  AT 93-94.

On January 29, 2001, plaintiff underwent a posterior fossa

---

[1]      Portions of the administrative transcript (Dkt. No. 6), which was filed by the Commissioner with the agency's answer, will be cited as "AT ___."

suboccipital craniectomy for clipping of a right PICA aneurysm.  AT 95-127.  Following that surgery, which was performed by Dr. James W. Holsapple, assisted by Dr. Bruce Frankel, plaintiff was referred to Dr. Craig Montgomery, a neurosurgeon, for follow-up Gamma knife radiotherapy which was ultimately performed on April 2, 2001.  AT 96-99, 145-48.

Since her surgery plaintiff has continued to treat with Dr. Holsapple and Dr. Montgomery, complaining of ongoing headaches and poor balance.  AT 211.  Plaintiff has been diagnosed over time, including by Dr. Montgomery, as suffering from post-craniectomy headache and post-subarachnoid syndrome.  AT 196, 198.  In addition to attempting to control the pain with a variety of medications, *see* AT 211, plaintiff has sought assistance from various sources including the St. Camillus Health and Rehabilitation Center, where she participated in physical therapy from February 7, 2003 until March 27, 2003.[2]  AT 169-94.  Despite that regimen of physical therapy plaintiff's clinical findings remained constant, and she did not meet any of her goals in the twelve visits there.  AT 172-75. Plaintiff also made four visits to the New York Pain Center in the spring of

---

[2]      Although at the time she completed her disability questionnaire plaintiff reported taking no medications, AT 89, since her surgery she has been prescribed various medications for her pain, including Neurontin, Zanaflex, Skelaxin and Tylenol. AT 216, 218.

2003, where nerve blocks were administered on March 11, 2003 and April 8, 2003.  AT 203-07.   During those visits plaintiff denied experiencing any nausea, dizziness, imbalance or blurred vision.  AT 203.  Plaintiff was ultimately referred by Dr. Tiso for acupuncture on a trial basis.  *Id.*

Plaintiff was seen consultatively by Dr. Nabil Aziz for a neurologic exam on March 15, 2002.  AT 218-19.  Upon examination, Dr. Aziz noted that plaintiff did not experience dizziness, loss of consciousness, clinical seizure, memory or speech difficulties, nausea or vomiting, loss of taste or smell, loss of vision or double vision, facial numbness or tingling, difficulty in chewing or swallowing, hearing loss, tinitus or vertigo, or focal motor weakness or other sensory symptoms.  AT 218.  Dr. Aziz observed that plaintiff was alert and well-oriented, her speech was fluent, and her comprehension and mentation were intact.  AT 219.  Based upon his examination, the results of which were largely unremarkable, Dr. Aziz opined that plaintiff suffered from "[c]ervicogenic headache, secondary to chronic cervical muscle strain[,]" and recommended a regimen of physical therapy focused upon the neck and to include range of motion exercises, ultrasound, massage, and moist heat as well as the use of Zanaflex to increase muscle tone.  AT 219.

During a follow-up visit with Dr. Aziz on May 9, 2002, plaintiff

reported that she was doing better with physical therapy.  AT 217.  In his report regarding that session Dr. Aziz found plaintiff's headaches to have improved; the remaining results recorded by Dr. Aziz, based upon that examination, were largely unremarkable.  *Id.*

Plaintiff saw Dr. Aziz for a second follow-up visit on August 12, 2002, reporting on that occasion that she had stopped taking her medication in light of the side effects which she was experiencing, and had been discharged from physical therapy because she had reached maximum improvement.  AT 216.  Dr. Aziz's office notes from that visit reflect primarily insignificant objective results and report his impression as cervicogenic headache, outlining various options for treatment including nerve blocks as well as the continuation of conservative massage and physical therapy treatment.  *Id.*

In August of 2003 plaintiff was examined by Dr. Robert E. Todd, a neurologist.[3]  AT 211-13.  Dr. Todd reported that his neurological examination was "unremarkable with the exception of a defect in the posterior portion of the skull affecting the right occiput" and that plaintiff experienced tenderness in that area.  AT 212.  Based upon his analysis, Dr. Todd concluded that plaintiff suffers from "a modicum of occipital

---

[3]     In his report of that examination, Dr. Todd lamented the fact that he had not been provided access to any of plaintiff's medical records.  AT 211.

neuralgia that waxes and wanes throughout the course of the day depending on the activity that she undertakes" and predicted that it would be both a "lifelong problem for her" and "a life altering experience."  AT 213.  Dr. Todd encouraged the plaintiff to continue with acupuncture, which "has helped", and suggested use of a Lidoderm patch to see if that would provide relief, but otherwise suggested continuation of her "current regimen of conservative treatment."  *Id.*

In addition to these treating and consulting sources, plaintiff was consultatively examined by Dr. Kalyani Ganesh on October 29, 2001.  AT 152-55.  Dr. Ganesh's impressions, based upon his physical and mental examination of the plaintiff, were largely unremarkable, with no reported finding of psychiatric impairment and an overall impression of status post-surgery for brain aneurysm and post-Gamma knife surgery.  AT 154.  While Dr. Ganesh found plaintiff to be moderately limited in her ability to sit, stand, walk, climb, bend, lift, carry, push and pull, he also noted that this was "likely to improve".  AT 155.

Plaintiff's condition was also evaluated on November 27, 2001 by Dr. Kristen Barry, a psychologist.  AT 156-60.  Dr. Barry administered both a Wechsler Adult Intelligence Scale-III ("WAIS-III") test, with resulting intelligence quotient ("IQ") scores within the average range, and a Bender

Visual-Motor Gestalt test, with no significant distortion discerned.  AT 158.

Dr. Barry reported that plaintiff's complaints were not consistent with her

examination results, and recorded no Axis I and Axis II diagnoses, with a

reported Axis III diagnosis of "[h]istory of brain aneurysm" and

"Thalassemia."[4]  AT 159.

Plaintiff's medical records were reviewed by state agency

consultants in December of 2001.  AT 161-68.  Based upon their review,

those doctors concluded that plaintiff is capable of lifting and carrying

twenty pounds occasionally and ten pounds frequently; can stand, walk

and/or sit for about six hours in an eight hour work day; and is unlimited in

the ability to use her hands and feet for pushing and pulling.  AT 162.

Those physicians also concluded that plaintiff can perform most postural

activities occasionally, and experiences no manipulative, visual,

communicative, or environmental limitations other than to avoid exposure

to hazards such as machinery and height.  AT 164-66.

II.    PROCEDURAL HISTORY

_____

[4]        According to a authoritative medical source, thalassemia is defined as

a heterogeneous group of hereditary hemolytic anemias that have in
common a decreased rate of synthesis of one or more hemoglobin
polypeptide chains and are classified according to the chain involved.

Dorland's Illustrated Medical Dictionary 1821 (29th ed. 2000).

A.   Proceedings Before The Agency

Plaintiff filed an application for disability insurance benefits under the Social Security Act on October 1, 2001, alleging a disability onset date of January 29, 2001.  AT 44-46.  Plaintiff's application for benefits was denied on or about December 26, 2001.  AT 26-30.

At plaintiff's request, *see* AT 31, a hearing was conducted on June 5, 2003 before ALJ Alfred R. Tyminski to address the denial of her application for benefits.  AT 220-235.  Following that hearing, at which plaintiff was represented by counsel, ALJ Tyminski issued a decision on October 14, 2003 finding that plaintiff was not disabled at the relevant times, and thus upholding the denial of benefits.  AT 18-23.

In his decision ALJ Tyminski applied the now-familiar five step sequential test for analyzing claims of disability under the Act.   After finding that plaintiff had not engaged in substantial gainful activity since the onset of her disability, ALJ Tyminski found at step two that plaintiff suffers from a medically diagnosed impairment which limits her ability to perform work related activities, but that her condition does not meet or equal any of the presumptively disabling conditions listed in the governing regulations, 20 C.F.R. Pt. 404, Subpt. P, App. 1.[5]  AT 19-21.

---

[5]     Plaintiff testified during the hearing that she earns between ten and fifteen dollars per week walking a neighborhood child to and from a local bus stop.  AT

The ALJ next turned to a review of the medical evidence to determine the extent to which plaintiff's condition imposed limitations on her ability to perform work related functions.  AT 21.  In making that analysis plaintiff considered, but rejected as unsupported, plaintiff's claim of incapacitating pain, finding it to be inconsistent with her daily activities.  AT 22.  Based upon his review of her capabilities, ALJ Tyminski concluded that plaintiff is able to perform her past relevant work as a jewelry store sales clerk, and thus found it unnecessary to proceed to step five of the sequential analysis to determine the availability of other work which she can perform, notwithstanding her limitations.  *Id.*  ALJ Tyminski therefore concluded that plaintiff was not disabled at the relevant times, and upheld the agency's denial of benefits.  AT 22-23.  ALJ Tyminski's opinion became a final determination of the agency when, on February 3, 2004, the Social Security Administration Appeals Council denied plaintiff's request for review of that decision.  AT 5-7.

B.   This Action

Plaintiff commenced this action on January 3, 2004.  Dkt. No. 1.  Issue was thereafter joined by the Commissioner's filing on June 1, 2004 of an answer, accompanied by an administrative transcript of the

---

227.  Such casual employment does not qualify as substantial gainful activity under the regulations.  *See* 20 C.F.R. § 404.1574.

proceedings and records before the agency.  Dkt. Nos. 5, 6.  With the

filing of plaintiff's brief on July 1, 2004, Dkt. No. 7, and that on behalf of

the Commissioner on September 16, 2004, Dkt. No. 14,  the matter is now

ripe for determination and has been referred to me for the issuance of a

report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B) and

Northern District of New York Local Rule 72.3(d).  *See also* Fed. R. Civ. P.

72(b).[6]

III.    DISCUSSION

     A.    Scope of Review

_____A court's review under 42 U.S.C. § 405(g) of a final decision by the

Commissioner is limited; that review requires a determination of whether

the correct legal standards were applied, and whether the decision is

supported by substantial evidence.  *Veino v. Barnhart*, 312 F.3d 578, 586

(2d Cir. 2002); *Shaw v. Chater*, 221 F.3d 126, 131 (2d Cir. 2000); *Schaal

v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998); *Martone v. Apfel*, 70 F.

Supp.2d 145, 148 (N.D.N.Y. 1999) (Hurd, J.) (citing *Johnson v. Bowen*,

---

[6]     This matter has been treated in accordance with the procedures set forth in General Order No. 18 (formerly, General Order No. 43) which was issued by the Hon. Ralph W. Smith, Jr., then-Chief United States Magistrate Judge on January 28, 1998, and amended and reissued by then-Chief District Judge Frederick J. Scullin, Jr., on September 19, 2001.  Under that General Order an action such as this is considered procedurally, once issue has been joined, as if cross-motions for judgment on the pleadings had been filed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

817 F.2d 983, 985 (2d Cir. 1987)).   Where there is reasonable doubt as to whether the Commissioner applied the proper legal standards, her decision should not be affirmed even though the ultimate conclusion reached is arguably supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 148.  If, however, the correct legal standards have been applied and the ALJ's findings are supported by substantial evidence, those findings are conclusive, and the decision should withstand judicial scrutiny regardless of whether the reviewing court might have reached a contrary result if acting as the trier of fact.  *Veino*, 312 F.3d at 586; *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988); *Barnett v. Apfel*, 13 F. Supp.2d 312, 314 (N.D.N.Y. 1998) (Hurd, M.J.); *see also* 42 U.S.C. § 405(g).

The term "substantial evidence" has been defined as "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson v. Perales*, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427 (1971) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 217 (1938)).  To be substantial, there must be "'more than a mere scintilla'" of evidence scattered throughout the administrative record.  *Id.*; *Martone*, 70 F. Supp.2d at 148 (citing *Richardson*).  "To determine on appeal whether an ALJ's findings are supported by

substantial evidence, a reviewing court considers the whole record, examining the evidence from both sides, because an analysis of the substantiality of the evidence must also include that which detracts from its weight." *Williams*, 859 F.2d at 258 (citing *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488, 715 S. Ct. 456, 464 (1951)).

When a reviewing court concludes that incorrect legal standards have been applied, and/or that substantial evidence does not support the agency's determination, the agency's decision should be reversed. 42 U.S.C. § 405(g); *see Martone*, 70 F. Supp.2d at 148. In such a case the court may remand the matter to the Commissioner under sentence four of 42 U.S.C. § 405(g), particularly if deemed necessary to allow the ALJ to develop a full and fair record or to explain his or her reasoning. *Martone*, 70 F. Supp.2d at 148 (citing *Parker v. Harris*, 626 F.2d 225, 235 (2d Cir. 1980)). A remand pursuant to sentence six of section 405(g) is warranted if new, non-cumulative evidence proffered to the district court should be considered at the agency level. *See Lisa v. Secretary of Dep't of Health & Human Servs. of U.S.*, 940 F.2d 40, 43 (2d Cir. 1991). Reversal without remand, while unusual, is appropriate when there is "persuasive proof of disability" in the record and it would serve no useful purpose to remand the matter for further proceedings before the agency. *Parker*, 626 F.2d at

235; *Simmons v. United States R.R. Retirement Bd.*, 982 F.2d 49, 57 (2d

Cir. 1992); *Carroll v. Secretary of Health & Human Servs.*, 705 F.2d 638,

644 (2d Cir. 1983).

> B.   Disability Determination - The Five Step Evaluation Process

The Social Security Act defines "disability" to include the "inability to

engage in any substantial gainful activity by reason of any medically

determinable physical or mental impairment which can be expected to

result in death or which has lasted or can be expected to last for a

continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).

 In addition, the Act requires that a claimant's

> physical or mental impairment or impairments
> [must be] of such severity that he is not only
> unable to do his previous work but cannot,
> considering his age, education, and work
> experience, engage in any other kind of substantial
> gainful work which exists in the national economy,
> regardless of whether such work exists in the
> immediate area in which he lives, or whether a
> specific job vacancy exists for him, or whether he
> would be hired if he applied for work.

*Id.* § 423(d)(2)(A).

The agency has prescribed a five step evaluative process to be

employed in determining whether an individual is disabled.  *See* 20 C.F.R.

§§ 404.1520, 416.920.  The first step requires a determination of whether

the claimant is engaging in substantial gainful activity; if so, then the

14

claimant is not disabled, and the inquiry need proceed no further.  *Id.* §§ 404.1520(b), 416.920(b).   If the claimant is not gainfully employed, then the second step involves an examination of whether the claimant has a severe impairment or combination of impairments which significantly restricts his or her physical or mental ability to perform basic work activities.  *Id.* §§ 404.1520(c), 416.920(c).  If the claimant is found to suffer from such an impairment, the agency must next determine whether it meets or equals an impairment listed in Appendix 1 of the regulations.  *Id.* §§ 404.1520(d), 416.920(d); *see also id.* Part 404, Subpt. P, App. 1.  If so, then the claimant is "presumptively disabled".  *Martone*, 70 F. Supp.2d at 149 (citing *Ferraris v. Heckler*, 728 F.2d 582, 584 (2d Cir. 1984)); 20 C.F.R. §§ 404.1520(d), 416.920(d).

If the claimant is not presumptively disabled, step four requires an assessment of whether the claimant's residual functional capacity ("RFC") precludes the performance of his or her past relevant work.  20 C.F.R. §§ 404.1520(e), 416.920(e).  If it is determined that it does, then as a final matter the agency must examine whether the claimant can do any other work.  *Id.* §§ 404.1520(f), 416.920(f).

The burden of showing that the claimant cannot perform past work lies with the claimant.  *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996);

*Ferraris*, 728 F.2d at 584.  Once that burden has been met, however, it becomes incumbent upon the agency to prove that the claimant is capable of performing other work.  *Perez*, 77 F.3d at 46.  In deciding whether that burden has been met, the ALJ should consider the claimant's RFC, age, education, past work experience, and transferability of skills.  *Ferraris*, 728 F.2d at 585; *Martone*, 70 F. Supp.2d at 150.

      C.     <u>The Evidence in this Case</u>

           1.     <u>The ALJ's RFC Finding</u>

In support of her challenge to the ALJ's finding of no disability, plaintiff argues that his RFC finding, which was pivotal to that determination, lacks the support of substantial evidence, and indeed is supported by no evidence.

A claimant's RFC represents a finding of the range of tasks he or she is capable of performing notwithstanding the impairments at issue.  20 C.F.R. § 404.1545(a).  An RFC determination is informed by consideration of a claimant's physical abilities, mental abilities, symptomology, including pain, and other limitations which could interfere with work activities on a regular and continuing basis.  *Id.*; *Martone*, 70 F.Supp.2d at 150.

To properly ascertain a claimant's RFC, an ALJ must therefore assess plaintiff's exertional capabilities, addressing his or her ability to sit,

stand, walk, lift, carry, push and pull.  20 C.F.R. § 404.1569a.

Nonexertional limitations or impairments, including impairments which

result in postural and manipulative limitations, must also be considered.

20 C.F.R. § 404.1569a; *see also* 20 C.F.R. Part 404, Subpt. P, App. 2 §

200.00(e).  When making an RFC determination, an ALJ must specify

those functions which the claimant is capable of performing; conclusory

statements concerning his or her capabilities, however, will not suffice.

*Martone*, 70 F.Supp.2d at 150 (citing *Ferraris,* 728 F.2d at 587).  An

administrative RFC finding can withstand judicial scrutiny only if there is

substantial evidence in the record to support each requirement listed in

the regulations.  *Martone*, 70 F.Supp.2d at 150 (citing *LaPorta v. Bowen*,

737 F. Supp. 180, 183 (N.D.N.Y. 1990)); *Sobolewski v. Apfel*, 985 F.Supp.

300, 309-10 (E.D.N.Y. 1997).

    This action presents a unique set of circumstances.  While plaintiff's

medical records support the fact that she suffered from a ruptured

cerebral aneurysm, for which she underwent corrective surgery,

examinations which have been conducted since her recovery from that

surgery have yielded largely unremarkable objective findings.  Plaintiff's

contention that the ALJ's RFC finding derives no support from the period

overlooks several critical pieces of evidence.  Some eleven months after

her operation, plaintiff's craniectomy surgeon, Dr. Holzapple, wrote that she was clinically stable and could return to work without restriction as of December 24, 2001.  AT 143.  It was not until more than one year later when, on January 30, 2003, plaintiff complained to Dr. Montgomery of headaches made worse as a result of exertion.  AT 196.  Even with that report, Dr. Montgomery recommended only conservative treatment and ordered testing through which residual AVM and a further aneurysm were ruled out.  AT 196-98.

The ALJ's RFC finding also derives support from an RFC determination made by agency consultants in December of 2001.  AT 161-68.  Such consultative reports can provide substantial evidence for an ALJ's determination.  *Barringer v. Comm'r of Soc. Sec.*, 358 F.Supp.2d 67, 79 (N.D.N.Y. 2005) (Sharpe, J.).

To counter these findings plaintiff offers a statement by a consulting neurologist, Dr. Todd, finding that she is "obviously unable to work[.]"  AT 213.  Dr. Todd, however, whose opinion is not entitled to the weight generally afforded to opinions of a treating physician (and, as will be seen, addresses the ultimate issue reserved to the Commissioner), does not provide suitable elaboration for his opinion regarding plaintiff's actual

18

functional limitations.[7]  In any event, the mere fact that there is conflicting evidence in the record does not negate a finding of substantial evidence to support Commissioner's decision.  *E.g.*, *Kleiman v. Barnhart*, No. 03 Civ. 6035, 2005 WL 820261, at *13-*14 (S.D.N.Y. Apr. 8, 2005).

In further support of her arguments, plaintiff also relies upon a functional capacity evaluation conducted by a physical therapist on June 4, 2003.  AT 208-10.  While that evaluation is seemingly contradictory to the findings of the ALJ, it reflects that the assessment is inconclusive, based upon plaintiff's inability to assume all test postures, and also notes that during the examination upon which it was based plaintiff appeared to "exhibit symptom exaggeration for her test[.]"  AT 208-09.  Once again, while this RFC assessment may be somewhat in conflict with the ALJ's finding, it does not negate a finding that the ALJ's finding is supported by substantial evidence in the record.

In sum, while there is arguably conflicting evidence on this score, the ALJ's finding that plaintiff retains the RFC to perform light work, and the functions associated with her past relevant work, is supported by substantial evidence.

2.   Treating Physician

---

[7]     The requirements for qualifying as a treating physician under the regulations are set out elsewhere in this opinion.  *See* pp. 19-25, *post.*

_____In further support of her challenge to the Commissioner's determination plaintiff asserts that the opinion of Dr. Todd, who she characterizes as a treating physician, was improperly discounted by the ALJ.

Ordinarily, the opinion of a treating physician is entitled to considerable deference, provided that it is supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence.[8]  *Veino*, 312 F.3d at 588; *Barnett*, 13 F. Supp.2d at 316.  Such opinions are not controlling, however, if contrary to other substantial evidence in the record.  *Veino*, 312 F.3d at 588.  Where conflicts arise in the form of contradictory medical evidence, their resolution is properly entrusted to the

---

[8]      The regulation which governs treating physicians provides:

> Generally, we give more weight to opinions from your treating sources . . . If we find that a treating source's opinion on the issue(s) of the nature and severity of your impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in your case record, we will give it controlling weight.   When we do not give the treating source's opinion controlling weight, we apply [various factors] in determining the weight to give the opinion.

20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).

Commissioner.  Id.

In deciding what weight, if any, an ALJ should accord to medical opinions, he or she may consider a variety of factors including "[t]he duration of a patient-physician relationship, the reasoning accompanying the opinion, the opinion's consistency with other evidence, and the physician's specialization or lack thereof[.]"  See *Schisler v. Sullivan*, 3 F.3d 563, 568 (2d Cir. 1993) (discussing 20 C.F.R. §§ 404.1527, 416.927).

When a treating physician's opinions are repudiated, the ALJ must provide reasons for the rejection.  20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  Failure to apply the appropriate legal standards for considering a treating physician's opinions is a proper basis for reversal and remand, as is the failure to provide reasons for rejection of his or her opinions.  *Johnson*, 817 F.2d at 985; *Barnett*, 13 F. Supp.2d at 316-17.

In this instance Robert E. Todd, M.D., a neurologist, examined the plaintiff on August 12, 2003, on referral for a second opinion, and rendered a report of his findings.  AT 211-13.  ALJ Tyminski's decision makes no reference to Dr. Todd's written report, although he professes to have based his determination on the record as a whole.  AT 21.

While plaintiff now argues that Dr. Todd's opinions were entitled to

significant deference under the applicable treating physician guidelines,

the record in this case discloses no basis to support plaintiff's assertion

that Dr. Todd should be regarded as a treating physician.  Dr. Todd saw

the plaintiff on a single occasion on a referral basis, and rendered a report

based upon that examination.  A consulting physician who has seen a

claimant on a single, isolated occasion is not properly regarded as a

treating source whose opinions are entitled to significant deference by

regulation.  *George v. Bowen*, 692 F.Supp. 215, 219 (S.D.N.Y. 1988).

ALJ Tyminski was therefore neither bound to accept Dr. Todd's opinion

nor required to explain his reasons for rejecting it.

There is yet another reason why Dr. Todd's opinion is not entitled

deference.  In stating that the plaintiff is "obviously unable to work" Dr.

Todd spoke to the ultimate issue, reserved to the Commissioner.  *See* 20

C.F.R. § 404.1527(e)(1); *Snell v. Apfel*, 177 F.3d 128, 133 (2d Cir. 1999).

Accordingly, Dr. Todd's opinion, which does not expressly address

limitations associated with plaintiff's condition but instead states, in

conclusory fashion, that she is unable to work, is not entitled to special

deference.

Another piece of evidence upon which the plaintiff places heavy

reliance is the functional capacity evaluation conducted on June 4, 2003

by her physical therapist, Cole D. Taylor, P.T.  AT 208-09.  In that report physical therapist Taylor has opined that "[a]ccording to the Blankenship Protocol for Job Analysis, [plaintiff] was not qualified for any career at this time.  This conclusion was based on the patients [sic] inability to assume test postures as well as no work demand classifications."  AT 209.  While plaintiff has not directly argued as much, she could assert that these opinions are entitled to the degree of deference ordinarily given to a treating source.  Such an argument, however, would be unavailing.

Opinions of a physical therapist such as Cole Taylor are no more worthy of consideration as evidence from a treating, medical source than those of a chiropractor.  An ALJ has the discretion to determine the appropriate weight to accord a chiropractor's opinion based on all the evidence before him or her, since a chiropractor's opinion is not subject to the treating physician rule.  *Diaz v. Shalala*, 59 F.3d 307, 314 (2d Cir. 1995); *Toro v. Chater*, 937 F.Supp. 1083, 1091-92 (S.D.N.Y. 1996).  In order to be given controlling weight under the treating physician rule, a treating source's opinion must be a "medical opinion".  20 C.F.R. § 404.1527; *Diaz*, 59 F.3d at 313; *Toro*, 937 F. Supp. at 1091-92.  Under the regulations, however, a chiropractor is not an "acceptable medical source" qualified to give a medical opinion.  *Diaz*, 59 F.3d at 313 (discussing 20

C.F.R. §§ 404.1513(a) and (e)); *Toro*, 937 F. Supp. at 1091-92.  Since a chiropractor cannot provide a medical opinion, chiropractor's opinions are not subject to the treating physician rule, and consequently there is no "hard and fast rule" governing the weight which an ALJ must give a chiropractor's opinion.  *Diaz*, 59 F.3d at 313, 314 n. 8; *Toro*, 937 F. Supp. at 1091-92.

Like reports of a treating chiropractor, the opinions of plaintiff's physical therapist, Cole D. Taylor, P.T., are not considered opinions of a treating source.  This does not mean, of course, that the therapist's opinions regarding the severity of plaintiff's impairment and how it affects her ability to work must be entirely discounted; indeed, the regulations provide that a therapist's opinion concerning these matters may be considered for purposes of assisting the ALJ in understanding any limitations associated with an impairment.  20 C.F.R. § 404.1513(d)(1); *see Chandler v. Callahan*, No. 96-CV-1790, 1998 WL 99384, at *5 (N.D.N.Y. Feb. 23, 1998) (Pooler, J. and DiBianco, M.J.) (citing 20 C.F.R. §§ 404.1513(e)(3), 416.913(e)(3)).

While the physical therapist's opinions may have been worthy of consideration in general, as bearing upon the plaintiff's condition, it is clear that they were not binding upon the ALJ.  Like Dr. Todd, physical

therapist Taylor appears to have seen the plaintiff only once for purposes of performing an evaluation, and thus is not a treating source in the traditional sense.  Moreover, even if he were properly regarded as a treating source, the opinions of physical therapist Taylor, like those of Dr. Todd, infringed upon the Commissioner's prerogative by addressing the ultimate issue – the plaintiff's  ability *vel non* to work at any career – and for that reason are not binding upon the ALJ.  *See* AT 209.

In sum, the Commissioner was not required to accept the opinions of Dr. Todd and physical therapist Cole as treating sources, or to explain his rejection of those opinions.

### 3.    Pain

Central to the plaintiff's disability claim is her contention that she is unable to work as a result of her pain.  AT 234.  Plaintiff maintains that because of the pain she cannot concentrate, and must have access to a bed in order to assist in relieving herself of the pain.  *Id.*  In her challenge to the agency's determination, plaintiff asserts that the ALJ improperly discounted her subjective complaints of pain without setting forth an appropriate explanation for that rejection.

An ALJ must take into account subjective complaints of pain in making the five step disability analysis.  20 C.F.R. §§ 404.1529(a), (d),

416.929(a), (d).  When examining the issue of pain, however, the ALJ is

not required to blindly accept the subjective testimony of a claimant.

*Marcus*, 615 F.2d at 27; *Martone*, 70 F. Supp.2d at 151 (citing *Marcus*).

Rather, an ALJ retains the discretion to evaluate a claimant's subjective

testimony, including testimony concerning pain.  *See Mimms v. Heckler,*

750 F.2d 180, 185-86 (2d Cir. 1984).  In deciding how to exercise that

discretion the ALJ must consider a variety of factors which ordinarily

would be relevant on the issue of credibility in any context, including the

claimant's credibility, his or her motivation, and the medical evidence in

the record.  *See Sweatman v. Callahan*, No. 96-CV-1966, 1998 WL

59461, at *5 (N.D.N.Y. Feb. 11, 1998) (Pooler, D.J. and Smith, M.J.)

(citing *Marcus*, 615 F.2d at 27-28)).  In doing so, the ALJ must reach an

independent judgment concerning the actual extent of pain suffered and

its impact upon the claimant's ability to work.  *Id.*

    When such testimony is consistent with and supported by objective

clinical evidence demonstrating that claimant has a medical impairment

which one could reasonably anticipate would produce such pain, it is

entitled to considerable weight.[9]  *Barnett*, 13 F. Supp.2d at 316; *see also*

---

        [9]      In the Act, Congress has specified that a claimant will not be viewed as
disabled unless he or she supplies medical or other evidence establishing the
existence of a medical impairment which would reasonably be expected to produce the
pain or other symptoms alleged.  42 U.S.C. § 423(d)(5)(A).

20 C.F.R. §§ 404.1529(a), 416.929(a).  If the claimant's testimony concerning the intensity, persistence or functional limitations associated with his or her pain is not fully supported by clinical evidence, however, then the ALJ must consider additional factors in order to assess that testimony, including: 1) daily activities; 2) location, duration, frequency and intensity of any symptoms; 3) precipitating and aggravating factors; 4) type, dosage, effectiveness and side effects of any medications taken; 5) other treatment received; and 6) other measures taken to relieve symptoms.  20 C.F.R. §§ 404.1529(c)(3)(i)-(vi), 416.929(c)(3)(i)-(vi).

After considering plaintiff's subjective testimony, the objective medical evidence, and any other factors deemed relevant, the ALJ may accept or reject claimant's subjective testimony.  *Martone*, 70 F. Supp.2d at 151; *see also* 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).  If such testimony is rejected, however, the ALJ must explicitly state the basis for doing so with sufficient particularity to enable a reviewing court to determine whether those reasons for disbelief were legitimate, and whether the determination is supported by substantial evidence.  *Martone*, 70 F. Supp.2d at 151 (citing *Brandon v. Bowen*, 666 F. Supp. 604, 608 (S.D.N.Y. 1987)).  Where the ALJ's findings are supported by substantial evidence, the decision to discount subjective testimony may not be

disturbed on court review. *Aponte v. Secretary, Dep't of Health & Human Servs. of U.S.*, 728 F.2d 588, 591 (2d Cir. 1984).

It may be, as plaintiff asserts, that she does suffer from some degree of discomfort as a result of her back condition. The fact that she suffers from discomfort, however, does not automatically qualify her as disabled, since "disability requires more than mere inability to work without pain." *Dumas v. Schweiker*, 712 F.2d 1545, 1552 (2d Cir. 1983).

The ALJ's rejection of plaintiff's pain complaints was based principally upon the lack of any clinical evidence of significant neurological abnormalities or other objective findings, as well as the extent of her daily activities. *See* AT 22. The ALJ noted, and the record supports, that plaintiff is able to cook, do laundry, care for her children, shop (with assistance), socialize occasionally, engage in certain craft work, read, mend clothes, and care for her personal needs. AT 22; *see* AT 70-71, 230-31. Plaintiff can also pay bills and write letters, AT 230-31, and walks a neighborhood child to and from a local bus stop on a regular basis. AT 227. Also worthy of consideration with regard to evaluation of plaintiff's pain complaints is the conservative course of treatment which she has followed, the hiatus between December, 2001 and January of 2003 in seeking any treatment for her lingering headaches, and the fact that at

various times she has reported taking no medication whatsoever, only Tylenol.  AT 212, 218.  Under these circumstances, the ALJ's rejection of plaintiff's subjective pain complaints as being disabling are supported by substantial evidence, and were properly explained on the record.

IV.    SUMMARY AND RECOMMENDATION

Plaintiff, who underwent cranial surgery in January, 2001 to address a ruptured aneurysm, plainly suffers from residual effects of that surgery, including lingering pain.  The many health care providers who have seen the plaintiff since that surgery, both to examine her and to report consultatively, however, have failed to discern the existence of any objective findings which would support the degree of pain recounted by the plaintiff.  Under these circumstances, and given plaintiff's conservative course of treatment and the extent of her daily activities, the ALJ in this case properly rejected her subjective complaints of pain as being disabling and found that she is capable of returning to her past relevant work as a retail clerk in a jewelry store.  The ALJ's findings in this regard are supported by substantial evidence in the record.

With regard to plaintiff's contention that contrary opinions of treating sources were improperly discounted by the ALJ, I note that neither of the health care providers at issue saw the plaintiff on a continuous basis, and

thus they were not properly regarded as treating sources, and that additionally one of those was a physical therapist whose opinions are not entitled to deference under the treating source rule.  I also find that the opinion of one of those sources, Dr. Todd, who reported in conclusory fashion that plaintiff is unable to work, is not entitled to special consideration since it touched on a matter reserved to the Commissioner and did not provide specifics concerning the limitations experienced by the plaintiff as a result of her condition, leading to that conclusion.

Based upon the foregoing, it is hereby

RECOMMENDED that defendant's motion for judgment on the pleadings be GRANTED, the Commissioner determination of no disability AFFIRMED, and plaintiff's complaint in this action DISMISSED in all respects.

NOTICE: Pursuant to 28 U.S.C. § 636(b)(1), the parties may lodge written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court within ten (10) days.  FAILURE TO SO OBJECT TO THIS REPORT WILL PRECLUDE APPELLATE REVIEW. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(e), 72; *Roland v. Racette*, 984 F.2d 85 (2d Cir. 1993).

IT IS FURTHER ORDERED, that the Clerk of the Court serve a copy

of this Report and Recommendation upon the parties electronically.

Dated:      April 4, 2006
            Syracuse, NY

David E. Peebles
U.S. Magistrate Judge

G:\socialsecurity\Guinta.wpd